UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE M. JONES, | ) | CASE NO. 5:16-cv-2587 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| CITY OF AKRON, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is *pro se* plaintiff Lonnie M. Jones' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 3-6). He filed this motion contemporaneously with his complaint, in which he asserts claims under the Fair Housing Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983. For the reasons discussed below, the motion is DENIED.

## I.      BACKGROUND

Plaintiff's complaint describes three major disputes. First, plaintiff challenges the City of Akron's denial of his request to open a Sober House. He states he filed a request to open a Sober House with the City of Akron in 2012 but the City denied it based on zoning regulations. He contends he was told he would need to obtain a special permit. He does not describe the dwelling he proposed to turn into a group home. He does not describe his request to the City. He does not indicate whether he applied for the special permit. He does not indicate how the area in which he wishes to open the group home is zoned. Instead, he attaches a photocopy of a single page of the Akron Zoning Code, and refers to Article 5 § 153.260(C), pertaining to accessory uses in residence districts. Subsection (C) states:

> Roomers shall be permitted as an accessory provided the total number of persons, including roomers, inhabiting a dwelling unit does not exceed five.

Jones claims this is unconstitutional. He also contends the proposed tenants of the home would qualify as disabled making this a violation of the Fair Housing Act ("FHA"), and the Americans with Disabilities Act ("ADA").

Plaintiff apparently has multiple group homes, which he either owns or operates. He does not indicate what types of clientele are served by these other group homes. He claims he was served with a notice that his group homes exceed the maximum capacity of adults permitted to reside in a dwelling under this ordinance. He does not indicate when he was served with the notice.

Second, plaintiff objects to warrantless housing code inspections conducted on his other rental properties. It is not clear whether these properties are group homes, rooming houses, or single family rentals. Plaintiff also mentions that he is either buying properties through a land sale contract or attempting to sell some of the properties. It is not clear whether he is the actual owner of the properties in question. Nevertheless, he states disgruntled tenants he was trying to evict from these properties reported housing code violations within the premises to the Summit County Housing Department. This has led to housing inspections, citations, and even criminal prosecutions over the course of the last four years. Plaintiff claims defendant Groeger referred him to City of Akron Ordinance 150.02 pertaining to Entry and Inspection of a dwelling. That ordinance states in pertinent part:

> The Housing Inspector is authorized and directed to make inspections to determine the conditions of dwellings, rooming, houses and premises located within the city. For the purpose of making the inspections, the Housing Inspector is authorized to enter, examine, and survey, at all reasonable times, all dwellings, dwelling units, rooming units, and premises. The owner or occupant of every dwelling or rooming house or the person in charge thereof, on request of the Housing Inspector, may give the Housing Inspector free access to the dwelling or rooming house and its premises, at all reasonable times, for the purpose of the

> inspection, examination, and survey. If entry is refused or not obtained, the Housing Inspector shall conduct the inspection only as provided by law. This chapter shall not be construed to require an occupant, operator or owner to consent to a warrantless inspection of a dwelling, rooming house or premises except as provided by law.

(Doc. No. 1-4 at 24).[1] Jones alleges that, when he refused entry to defendants in the past pursuant to the ordinance, they retaliated against him by increasing their efforts to conduct the searches, and by issuing citations, which led to the imposition of criminal charges and fines. He also indicates he was the process of either purchasing or selling a property through a land sale contract when criminal proceedings brought an end to that sale arrangement. He claims defendants violated his Fourth Amendment rights, retaliated against him for refusing them entry to his properties, and allowed his tenants to retaliate against him in violation of the First Amendment.

Finally, plaintiff contends that defendant Groeger denied him access to public records, in violation of Ohio's Public Records Act, Ohio Revised Code § 149.43. He does not indicate which records he requested or what reason Groeger gave for not producing the documents.

Plaintiff asks this Court to grant him a TRO and a preliminary injunction. He seeks an order enjoining the City from enforcing Article 5 § 153.260(C) of its zoning code, and from requesting or conducting housing code violation inspections on his properties. He also asks this Court to order defendants to produce the documents he requested.

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

## II. STANDARD OF REVIEW

Plaintiff bears the burden of establishing entitlement to a preliminary injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citing cases). Preliminary relief is "an extraordinary remedy which should be granted only if the movant carries [his] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty.*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary*, 228 F.3d at 739. Ultimately, the decision to grant or deny preliminary injunctive relief rests within the discretion of the Court. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).

Consideration of whether to grant a preliminary injunction is governed by four factors. First, the Court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits" of his claim. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (internal quotation marks omitted). Second, the Court will determine "whether the [plaintiff] would suffer irreparable injury" if a preliminary injunction did not issue. *NACCO Materials Handling Grp. v. Toyota Material Handling USA, Inc.*, 246 F. App'x 929, 943 (6th Cir. 2007). Third, the Court must determine "whether the injunction would cause substantial harm to others." *Leary*, 228 F.3d at 739. Finally, the Court must consider "whether the public interest would be served" if the Court were to grant the requested injunction. *Overstreet*, 305 F.3d at 573. The four factors are not prerequisites, but are interrelated considerations that must be balanced against each other. *Leary*, 228 F.3d at 736 (citing cases). The first factor – the likelihood of success – is, however, the predominant concern. "Although no one factor is

4

controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

The standard for granting a temporary restraining order ("TRO") under Rule 65 is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm. *Reid v. Hood*, No. 1:10CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Fox*, 434 U.S. 1345, 1347 n. 2, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977)). "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co*., 78 F.3d 219, 226 (6th Cir. 1996). "If the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Id*. (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

##### 1. FHA and ADA Claims

Turning first to the merits of plaintiff's claim under the FHA, the Court finds that the likelihood of success on the merits of this claim, as it is written, is remote. The claim itself is not well defined, making it difficult for the Court to determine exactly what his claim is under the statute. He indicates that the proposed residents of his group home would be alcoholics and substance abuse addicts and, as such, they would qualify as disabled under the FHA. He

concludes they would be similar to a family because they would share chores and, therefore, he is entitled to relief under the FHA.

The FHA provides, in pertinent part, that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of … a person residing in or intending to reside in that dwelling after it is sold, rented or made available." 42 U.S.C. § 3604(f)(1). The FHA provides further that, for purposes of § 3604(f), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Sixth Circuit has repeatedly held that § 3604(f) applies to zoning and other laws, which regulate the location of group homes for the handicapped and disabled. *See Larkin v. Mich. Dept. of Soc. Servs.,* 89 F.3d 285, 289 (6th Cir. 1996); *Smith & Lee Assoc., Inc. v. City of Taylor, Mich. ("Smith & Lee I"),* 13 F.3d 920, 924 (6th Cir. 1993); *Marbrunak, Inc. v. City of Stow, Ohio,* 974 F.2d 43, 45 (6th Cir. 1992).

Initially, the Court must first determine whether the FHA or the ADA applies in this case. Plaintiff contends that, in 2012, he wanted to open a Sober House with adults who have alcohol or substance abuse addictions. He indicates he also owns or operates other group homes, but he does not specify the clientele they serve. While potential occupants of his proposed Sober House may qualify as disabled under the FHA, he does not provide sufficient information about the occupants of the other group homes to establish that they would also qualify as disabled under the FHA or the ADA.

In addition, before reaching the merits of plaintiff's claims, the Court must determine whether any of the exceptions to the FHA apply in this case. Pursuant to 42 U.S.C. § 3607(b)(1), "[n]othing in [the FHA] limits the applicability of any reasonable local, state, or federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1). In *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 728-737, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995), the Supreme Court construed § 3607(b)(1)'s exemption to apply where a governmental restriction limits "the maximum number of occupants permitted to occupy a dwelling" without regard to other factors, such as whether the occupants of the dwelling constitute a "family." In sum, zoning ordinances that cap the total number of occupants in order to prevent overcrowding of a dwelling fall within § 3607(b)(1)'s absolute exemption from the FHA. Zoning ordinances designed to preserve the family character of a neighborhood, which focus on the composition of households rather than on the total number of occupants living quarters can contain, are not exempt from the FHA. *City of Edmonds,* 514 U.S. at 734-735 (footnotes omitted).

Here plaintiff provides very little information regarding the zoning in question. Furthermore, the provision to which he objects indicates: "[r]oomers shall be permitted as an accessory provided the total number of persons, including roomers, inhabiting a dwelling unit does not exceed five." (Doc. No. 3-1 at 64). The ordinance in question does not appear to focus on the composition of the household, but rather strictly limits the number of persons in the dwelling. Absent additional information, it appears this regulation is exempt from FHA governance.

Furthermore, even if it arguably falls outside of the exception, it appears the statute of limitations may have run on plaintiff's FHA and ADA claims. Under the FHA, the statute of limitations requires a plaintiff to file a complaint within two years after the "occurrence or termination of an alleged discriminatory housing practice … whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc*., 210 F. App'x 469, 473 (6th Cir. 2006). Several courts in the Northern and Southern Districts of Ohio, including this Court, have subjected Title II ADA claims to the two-year limitations period applicable to personal injury actions in Ohio. *See McCormick v. Miami Univ.,* No. 1:10-CV-345, 2011 WL 1740018, at *13 (S.D. Ohio May 5, 2011); *Bay v. Clermont Cnty. Sheriff's Dep't,* No. 1:08–cv–376, 2010 WL 5014226, at *4 n. 4 (S.D. Ohio Nov. 3, 2010); *Deck v. City of Toledo,* 56 F.Supp.2d. 886, 891 (N.D. Ohio 1999). Plaintiff indicates he requested permission from the City to run a group home in 2012 and was denied. That is the last incident mentioned in his complaint. Based on that information, the statute of limitations for his FHA and ADA claims expired.

In addition, even if the other barriers to relief were not present, plaintiff did not demonstrate that these defendants discriminated against his potential tenants under the FHA, or the ADA. Handicap discrimination under the FHA or the ADA can be established by showing that the law or ordinance in question has a disparate impact upon disabled individuals, that the law intentionally discriminates against disabled individuals, or that there has been a failure to provide a reasonable accommodation to disabled individuals. *Larkin*, 89 F.3d at 289; *accord Smith & Lee Assoc., Inc. v. City of Taylor, Mich. ("Smith & Lee II"),* 102 F.3d 781, 790 (6th Cir. 1996).

Plaintiff appears to proceed against defendants only pursuant to a "reasonable accommodation" theory. Because the governing standards are essentially the same under the FHA and the ADA, the Court will address all of the plaintiff's reasonable accommodation claims in accordance with the requirements of the FHA. *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.,* 273 F.Supp.2d 643, 652 (W.D. Pa. 2003).

Under the FHA, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling," constitutes discrimination. 42 U.S.C. § 3604(f)(3)(B). Consequently, an accommodation is statutorily required when it is both *reasonable* and *necessary* to provide handicapped individuals with an *equal* opportunity to use and enjoy housing. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.,* 421 F.3d 170, 184, n. 12 (3d Cir. 2005). The "'reasonable accommodation' provision prohibits the enforcement of zoning ordinances and local housing policies in a manner that denies people with disabilities access to housing on par with that of those who are not disabled." *Hovsons, Inc. v. Twp. of Brick,* 89 F.3d 1096, 1104 (3d Cir. 1996) (internal citation omitted).

Plaintiff bears the burden of showing that the accommodation sought is reasonable. *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). If plaintiff makes this *prima facie* showing, defendants must come forward to demonstrate unreasonableness or undue hardship. *Id.; see also Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 543 (7th Cir. 1995). This burden-shifting analysis also applies to the "necessary" and "equal opportunity" elements of the requirement because "'a plaintiff is in the best position to show what is necessary to afford [his] clients (i.e., the handicapped population that it wishes to

9

serve) an equal opportunity to use and enjoy housing, [while] a defendant municipality is in the best position to provide evidence concerning what is reasonable or unreasonable within the context of the zoning scheme.'" *Lapid–Laurel, L.L.C. v. Zoning Bd. of Adjustment,* 284 F.3d 442, 458-59 (3d Cir. 2002).

Plaintiff does not allege sufficient facts to satisfy this burden. He contends he wanted to open a Sober House in 2012 but the City denied his request, telling him he needed a special permit. He further includes a citation to Section 153.260(C) of the City of Akron Zoning Code, limiting the number of roomers in the dwelling to five. Plaintiff does not indicate that he applied for the special permit. He does not indicate what type of accommodation he sought from the City. He does not state what the zoning is for the area in which his property is located, and what type of variance he would need. He does not specify whether there are other group homes for individuals with substance abuse problems in the area. He simply claims that limiting the number of inhabitants to five is a violation of the ADA and the FHA. This is insufficient to demonstrate a likelihood of success on the merits.

### 2. 42 U.S.C. § 1983 Claims

Plaintiff also fails to demonstrate likelihood of success on the merits of his civil rights claims under 42 U.S.C. § 1983. He objects to warrantless inspections of his rental properties as a violation of his Fourth Amendment rights. He contends these inspections occurred as a result of complaints to the Housing Department from tenants he was attempting to evict.

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . but upon probable cause." U.S. Const. amend. IV. In assessing whether

the right against unreasonable searches and seizures has been violated, the Court must consider whether the action is "attributable to the government," and amounts to a "search" or "seizure" for Fourth Amendment purposes. *See Skinner v. Ry. Labor Exec. Ass'n*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). If the contested action meets both of these requirements, the Court then considers whether the search or seizure is "unreasonable" under the Fourth Amendment. *Id*.

Here, plaintiff alleges the inspections were conducted by City of Akron Housing Inspectors, who arguably are government officials for purposes of § 1983. Assuming the inspection of the homes' interiors qualifies as a search, plaintiff must then demonstrate that the search was unreasonable. *Skinner*, 489 U.S. at 619. (citations omitted). Whether the intrusion is reasonable depends on all of the circumstances surrounding the search and the nature of the search itself. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985).

Plaintiff provides no information about these inspections, except that the defendants did not obtain warrants. The city ordinance in question authorizes the Housing Inspector to make inspections to determine the conditions of dwellings, rooming houses and premises located within the City. The ordinance specifically states that the owner, an occupant of every dwelling or rooming house, or the person in charge of the dwelling or rooming house, may give the Housing Inspector free access to the dwelling or rooming house and its premises, at all reasonable times, for the purpose of the inspection. It also affirmatively states that the ordinance does not require the owner, an occupant, or operator to consent to or submit to a warrantless inspection of a dwelling, rooming house or premises, except as provided by law. (Doc. No. 1-4 at

11

24). Plaintiff does not say that defendants conducted warrantless searches after he, his tenants, and the operator of the property all refused entry. He merely states that the defendants did not obtain warrants for the inspections.

Failure to obtain a warrant for an inspection, alone, does not make the search constitutionally unreasonable. Generally, to satisfy the Fourth Amendment's reasonableness requirement, a search or seizure must be "accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner*, 489 U.S. at 619. An exception to the Fourth Amendment's prohibition on warrantless searches applies, however, where officials obtain voluntary consent to search, either from the person whose property is searched, *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)), or "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected," *United States v. Matlock,* 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Therefore, a warrant arguably would be required to conduct inspections of the interior of the dwellings only if the inspection occurs after plaintiff, his tenants, and the operator of the property all refused entry. Plaintiff does not allege sufficient facts to suggest this occurred. In fact, he alleges many of the inspections were conducted at the behest of his tenants. He has not established a likelihood of success on the merits of this claim.

Furthermore, plaintiff contends that defendants retaliated against him for refusing them entry for interior inspections by continuing their efforts to inspect and by bringing criminal charges against him for housing code violations. He also asserts that his tenants used the defendants to retaliate against him for evicting them, by reporting housing code violations.

Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, plaintiff must establish that: 1) he engaged in constitutionally protected conduct; 2) an adverse action was taken against him by a government official that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Here, plaintiff's claims of retaliation are conclusory. Defendants began to conduct investigations into reports of housing code violations. Plaintiff declined to cooperate with the investigation, but defendants continued to investigate. The conduct of refusing entry to a dwelling did not cause defendants' actions. Those actions were already in progress. Furthermore, plaintiff claims his tenants retaliated against him for attempting to evict them. His tenants are not government officials and are not subject to suit under 42 U.S.C. § 1983. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981). Plaintiff has not demonstrated likelihood of success on the merits of this claim.

### B.    Irreparable Harm

In addition, plaintiff has not demonstrated he will suffer irreparable harm if he is not granted the extraordinary relief of a TRO. "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). With respect to his first claim, plaintiff is not seeking to preserve the status quo. He is seeking to fast forward to obtain his requested relief

before proving his case. This is not the purpose of a TRO. Nothing in the complaint suggests plaintiff will suffer irreparable harm if not granted temporary injunctive relief.

### C. Substantial Harm to Others and Public Interest

The remaining factors to be considered when reviewing a request for a preliminary injunction or TRO do not weigh heavily in favor of any party. Plaintiff has not alleged facts to suggest that the failure to grant injunctive relief at this stage of litigation would result in substantial harm to others, nor did he suggest that the public interest would be served by granting an injunction prior to litigation.

### IV. CONCLUSION

For all the foregoing reasons, plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 3-6) is **DENIED**.

**IT IS SO ORDERED**.

Dated: November 10, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**