# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE M. JONES, | ) | CASE NO. 5:16-cv-2587 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF AKRON, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' motion for summary judgment (Doc. No. 39 ["Mot."]), plaintiff's brief in opposition (Doc. No. 41 ["Opp'n"]), and defendants' reply (Doc. No. 43 ["Reply"]). For the reasons set forth herein, the motion is granted.

## I.    BACKGROUND

On October 24, 2016, plaintiff Lonnie M. Jones ("Jones") filed a complaint (Doc. No. 1, Complaint ["Compl."])—as later supplemented (Doc. No. 24, Supplemental Complaint ["S. Compl."])—against the City of Akron (the "City") and Dan Horrigan ("Horrigan"), in his official capacity as Mayor. The complaint also named Housing Administrator Duane Groeger ("Groeger") and housing inspectors Jodie Forester ("Forester"), Kathy Graves ("Graves"), and John Gould ("Gould"),[1] all sued in both their official and personal capacities.

In his complaint, Jones alleges that the City's enforcement of its Environmental Health Housing Code with respect to properties that he owns, operates, or leases constitutes violations of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments and his

---

[1] Inexplicably, each of the three housing inspectors is identified in the caption of the complaint as a "Sanitary Supervisor."

statutory rights under 42 U.S.C. § 1983 and Title VI[2] (42 U.S.C. § 2000d, *et seq.*). He further

alleges that the housing code violates the Fair Housing Act ("FHA") (42 U.S.C. § 3601, *et seq.*)

and the Americans With Disabilities Act ("ADA") (42 U.S.C. § 12101, *et. seq.*).[3]

All of Jones' claims are based on the same basic facts, which are largely undisputed.[4]

## II.    DISCUSSION

## A.    Summary Judgment Standard

When a party files a motion for summary judgment, it must be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[2] Jones actually makes his claim under Title VII (42 U.S.C. § 2000e, *et seq.*), which prohibits discrimination in employment and clearly does not apply here. Title VI prohibits discrimination in any program or activity receiving federal financial assistance. Since Jones' pro se status entitles him to somewhat liberal pleading standards, *see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), his complaint has been construed as stating a claim under Title VI.

[3] Other than citing the popular names of each of the federal statutes, Jones offers no statutory citations and does not pinpoint what aspect of any of the statutes may have been violated. In addition, Jones invokes the Court's supplemental jurisdiction; but the complaint appears to contain only federally-pleaded claims.

[4] Jones failed to serve any initial disclosures under Fed. R. Civ. P. 26, did not serve any written discovery requests or conduct any depositions of City personnel, and did not respond to defendants' written discovery requests. (Mot. at 297; Reply at 624.) In addition, the "affidavits" he belatedly supplied with his opposition brief, although claiming to be "sworn," are neither notarized nor in compliance with 28 U.S.C. § 1746. Although Jones is proceeding pro se and, as noted above, is entitled to some leeway, he is not permitted to simply ignore the Federal Rules of Civil Procedure and "ambush" the opposing parties with belatedly supplied "evidence" in an attempt to fend off summary judgment. In fact, courts have noted that "[p]laintiff's duty to comply with the Federal Rules of Civil Procedure, including those pertaining to discovery and motion practice, is not lessened merely because he appears pro se." *Despot v. Nationwide Ins.*, No. 1:12-CV-044, 2013 WL 4678857, at *3 (S.D. Ohio Aug. 30, 2013).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id.* at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (finding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to

defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks omitted) (citing *Anderson*, 477 U.S. at 247–48). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**B.     Analysis**

**1.     42 U.S.C. § 1983 (Claims 2–5, 7, 8; Municipal Liability)**

Jones raises several claims under 42 U.S.C. § 1983: Claim 2 (Fourth Amendment—warrantless inspection without probable cause); Claim 3 (First Amendment—retaliation); Claim 4 (noncompliance with Ohio's Public Records Act); Claim 5 (malicious prosecution); Claim 7 (tortious interference); and Claim 8 (false arrest and malicious prosecution). In addition, Jones seeks to hold the City liable on a theory of municipal liability.

**a)**  *Applicable Law—Elements of a § 1983; Statute of Limitations; Cognizability*

To prevail on any claim under § 1983, a plaintiff must prove: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

In addition, Section 1983 claims brought in Ohio are subject to the two-year statute of limitations for bodily injuries. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989) (applying Ohio Rev. Code § 2305.10). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) "If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id.*

This case was filed on October 24, 2016. Defendants assert that "any claim based on actions of a [d]efendant before October 24, 2014 is barred." (Mot. at 300 n.5.)  During his deposition, with respect to the period of October 24, 2014 to October 24, 2016, Jones was asked "when the warrantless inspections, citations, fines, and criminal charges occurred and by what defendants and at what properties[.]" (Doc. No. 39-11, Deposition of Lonnie M. Jones ["Jones Dep."] at 472.) Jones was unable to answer that question, claiming only that defendants themselves "have the records as it relates to this . . . [and should] go back and . . . look at the dates[.]" (*Id.* at 473.)

Jones also claimed that there was "an ongoing continuous pattern of events" making limitation to two years "inaccurate." (*Id.*) He stated that "all of these individuals consistently over this period of time violated my constitutional rights by the things I've listed in this lawsuit." (*Id.* at 474.) But the continuing violation doctrine "rarely extends . . . to § 1983 actions[,]" *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003), and "does not apply to serial violations: a series of discrete acts of which the plaintiff would have been immediately aware." *North v. Cuyahoga Cty.*,

No. 1:15-CV-01124-DAP, 2015 WL 5522009, at *3 (N.D. Ohio Sept. 16, 2015). "[D]iscrete unlawful acts . . . individually trigger the statute of limitations." *Id.*

The complaint does not identify the dates upon which the various alleged constitutional violations occurred and Jones was unable to clarify the facts during his deposition. Nor has Jones argued in favor of any exception other than the inapplicable continuing violation doctrine. Accordingly, any Section 1983 claim based on actions of any defendant prior to October 24, 2014 is time-barred.

Finally, some of Jones' Section 1983 claims raise allegations underlying certain prosecutions and convictions in proceedings in the Akron Municipal Court. These claims are not cognizable under Section 1983 to the extent a ruling on them would "necessarily imply the invalidity of [a] conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 478, 487–88, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (holding that, to recover damages for an allegedly unconstitutional conviction or other harm caused by actions that would render a conviction invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

**b)**   ***Individual Section 1983 Claims***

<u>*Second Claim for Relief—Fourth Amendment Violation*</u> [5]

In his second claim for relief, Jones alleges generally that "over the past four years" he "has been the subject of continued warrantless interior, [sic] inspections, citations, fines and

---

[5] The caption of this claim also references the Fifth Amendment, which protects against self-incrimination and double jeopardy, establishes the necessity of the grand jury, provides for substantive and procedural due process, and requires just compensation when private property is taken for public use. It is unclear how Jones believes the Fifth Amendment is implicated, and, "the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded

6

criminal charges[.]" (Compl. ¶ 20.)[6] These have occurred, he alleges, "in accordance with" the City's ordinances, in particular, "Ordinance 150.02 – Entry and Inspection." (*Id.* ¶ 21.) Jones further alleges that "[m]any times in the past [he] has refused to allow [d]efendants into the homes[,]" resulting in "retaliat[ion] against the [p]laintiff[.]" (*Id.* ¶ 22.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched[.]" U.S. Const. amend. IV. The Fourth Amendment's prohibition "does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) (citations omitted).[7]

Jones is very nonspecific about what properties were allegedly searched and by whom. Without that information, even if Jones at some unspecified time refused inspections, there is no way to know whether another person with "common authority" (*e.g.*, a tenant[8] or a property manager) may have consented to the inspection. The burden is on Jones to supply these specifics and he has not done so. His belated assertion that neither he nor "his tenants" gave permission (Opp'n at 545) is unavailing since there is no support in the record for the assertion. The "Exhibit

---

facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Therefore, the Court concludes that the second claim for relief contains no Fifth Amendment allegations.

[6] As already noted, to the extent the claim is based on actions prior to October 24, 2014, it is time-barred.

[7] "Common authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes[.]" *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).

[8] Jones, in fact, vaguely suggests that at least some of the inspections were at the behest of "disgruntled tenants who wish to get revenge on their landlords for evicting them." (Compl. at 3; ¶ 26.)

H" that Jones refers to in his opposition (*i.e.*, affidavits of three people who claim to be residents at 460 S. Maple Street in Akron) is inadmissible because the identities of these persons and/or their expected testimony was not disclosed or produced pursuant to Jones' obligations under the civil rules relating to disclosure and discovery.

In addition, since Jones brings individual-capacity claims against each of the named defendants, the burden is on him to plead and prove specific actions of each one that violated the Constitution. Defendants assert that Jones is unable to establish facts to support claims against each individual defendant. (*See* Mot. at 300–03 (citing *Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015) ("[E]ach defendant's liability must be assessed individually based on his own action.")).) Defendants point, in particular, to the following testimony from Jones' deposition as proof of his failure:

> Q.  . . . The second claim for relief is a complaint under the fourth . . . amendment[] against the individual defendants in this case for warrantless coerced inspections of private homes without probable cause; is that correct?
>
> A.  Yes.
>
> Q.  Paragraph 20, "Plaintiff has been the subject of continued warrantless interior inspections, citations, fines, and criminal charges by the defendants over the past four years." My question is, can you give me –  can you identify for me where and when these warrantless interior inspections and citations, fines, and criminal charges occurred and who was involved in them?
>
> A.  That's a very broad question and I do not have the specific date. I believe that you guys have better records of them because for a period of time I was denied access to the records.
>
> * * *
>
> Q.  But here's what we're here for today. You've sued Duane Groegor, Jodie Forester, Kathy Graves, and John Gould in their personal capacity, and throughout the complaint, and particularly in paragraph 20, you refer to

defendants as in plural. My question to you is in paragraph 20, which one of those four defendants conducted warrantless inspections, citations, fines, and criminal charges? I need to know the dates of those and I need to know the properties and I need to know the persons involved.

A.    Okay. The persons involved are all of them because they all went to various properties that I had at that given time. The properties, I can give you the addresses of the properties, which I believe are listed in here, but as far as the date, that's been about six or seven years of things, so I can't give you the exact dates; however, the dates are noted in your records.

* * *

Q.    I need to know from you, from October 24th of '14 to October 24th of '16, when the warrantless inspections, citations, fines, and criminal charges occurred and by what defendants and at what properties, because you've sued them individually –

A.    Right.

* * *

Q.    As we sit here today, are you able to tell me over that two-year period of time what Duane Groegor did, what Jodie Forester did, what Kathy Graves did, and/or what John Gould did, in their individual capacity, what their individual involvement was, are you able to describe that for me today?

A.    I'm able to tell you that all of these individuals consistently over this period of time violated my constitutional rights by the things that I've listed in this lawsuit. That's what I'm able to state. . . .

(Jones Dep. at 469–74.)

The record evidence fails to establish any Fourth Amendment violation by any of the individual defendants. Therefore, they are entitled to summary judgment with respect to the second claim for relief.

### *Third Claim for Relief—First Amendment Retaliation*

In his third claim for relief, Jones alleges that "in the past . . . tenants who have been or who are in the process of being evicted from [his] properties[,]" have complained to the defendants

"about the housing conditions[]" and have "requested [defendants] to inspect[.]" (Compl. ¶¶ 26–27.) Jones asserts that, despite his "right to evict[,]" the tenants are "go[ing] to the Housing Department to retaliate against [him], knowing that the Housing Department will come in and cite any possible violation[.]" (*Id.* ¶ 28.) "Plaintiff has informed the [d]efendants on many occasions that they are being used as a tool of retaliation when tenants are being evicted and that this is not proper under the law." (*Id.* ¶ 29.) Jones claims "[d]efendants have become a tool of retaliation against [him] as a result of [his] exercising his constitutional rights to evict tenants." (*Id.* ¶ 31.) Finally, he alleges that "when [he] complains about this unjust treatment by the [d]efendants, they step up their efforts on violations, fines, and criminal charges, in retaliation of the [p]laintiff stating his rights." (*Id.* ¶ 32.)

To state a claim for retaliation, Jones must show: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "Upon a prima facie showing, the burden shifts to the defendant to rebut the causal connection between the protected conduct and the adverse action by demonstrating that he would have undertaken the same adverse action absent the plaintiff's protected conduct." *Meadows v. Enyeart*, 627 F. App'x 496, 502 (6th Cir. 2015).

Presumably, the "protected conduct" that Jones is claiming is the fact that he "complain[ed] about . . . unjust treatment by the [d]efendants[.]" (Compl. ¶ 32.) "[T]he right to criticize public officials is clearly protected by the First Amendment." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 588 (6th Cir. 2008).

Defendants argue that the protected expression must "touch on a matter of public concern." (Mot. at 304 (citing *Connick v. Myers*, 461 U.S. 138, 146–48, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).) In *Connick*, the Supreme Court held that government employees who speak on matters of public concern are protected from retaliation by the First Amendment. As explained in *Connick*, this "public concern" test is applicable only in the arena of public employment, where the interests of government employees, as citizens, must be balanced against the interests of the State, as an employer. "'To expand this public concern limitation into the broader context of all citizen speech would wrench it from its original rationale and curtail a significant body of free expression that has traditionally been fully protected under the First Amendment.'" *Jenkins*, 513 F.3d at 587 (quoting *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 282 (3d Cir. 2004)); *see also Gable v. Lewis*, 201 F.3d 769, 771–72 (6th Cir. 2000) (holding that the "public concern" test is not applicable to petitioning activity outside the public employment context). Jones is not a public employee and, therefore, to be protected, his speech need not address a matter of public concern.

Where Jones' claim fails is at the third element—causation. He alleges in his complaint that inspections of his properties were "step[ped] up" both as a result of complaints from his tenants and by his own complaints regarding the defendants' response to tenant complaints. In his opposition brief, Jones makes no reference to his own complaints, but, rather, argues only that "the [d]efendants [have] become the machine of retaliation[,]" because they "have and continue to do inspections based on complaints filed by tenants who were under eviction[.]" (Opp'n at 548.)[9] But, in fact, it is the job of the defendants, as housing inspectors, to respond to tenant complaints; doing

---

[9] Absent a reference to retaliation in response to Jones' *own* complaints, there is no First Amendment protected conduct. Although Jones asserts, in conclusory fashion, that he has a "right to evict . . . tenants," (Compl. ¶ 28), he fails to identify the federal source of any such "right." One thing is certain, if there is such a right, it does not arise from the First Amendment.

so is not retaliation vis-à-vis the property owner. And even if the Court accepts as true that the complaining tenants were motivated by a desire to retaliate against Jones for having evicted them, that motive cannot be attributed to the defendants, who were simply performing their duties by responding to tenant complaints.

Jones has failed to establish the elements of a First Amendment retaliation claim. Therefore, the defendants are entitled to summary judgment on the third claim for relief.

### *Fourth Claim for Relief—Noncompliance with Ohio's Public Records Act*

In his fourth claim for relief, Jones alleges that he was deprived of the "right to defend himself, to understand the nature of the violations, has incurred, [sic] fines, and criminal charges" all because defendants allegedly failed to comply with Ohio's Public Records Act by supplying "records that relate to this case[.]" (Compl. ¶¶ 35, 38.)

The failure to comply with a state or local law is not synonymous with a constitutional violation. Section 1983 "does not cover official conduct that allegedly violates *state* law." *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989).

Further, to the extent Jones may be claiming that, by denying him access to records, defendants somehow denied him due process in the prosecution of the criminal charges brought against him in the Akron Municipal Court, any such claim is not cognizable under Section 1983 and can be brought only as a habeas corpus action challenging the constitutionality of his convictions. *Preiser v. Rodriguez*, 411 U.S. 475, 488–90, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *see also Heck*, 512 U.S. 477.

Defendants are entitled to summary judgment on Jones' fourth claim for relief.

*Fifth Claim for Relief—Malicious Prosecution*

In his fifth claim for relief, Jones complains that he has been "cited, fined, charged and convicted" with respect to properties that he does not own, in violation of Akron City Ordinance 150.03. (Compl. ¶¶ 39, 42.) He alleges that this is "a violation of the Due Process [sic] and amounts to Malicious Prosecution. As well as unjust enrichment." (*Id.* ¶ 42.)[10]

As already noted, violation of state or local law is not cognizable under Section 1983. Although the Sixth Circuit does recognize a claim of malicious prosecution under the Fourth Amendment, Jones cannot meet the requirements of such a claim because, at the very least, he is unable to establish the fourth element of such a claim—that any prosecution was resolved in his favor. *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (articulating the four elements of a Fourth Amendment malicious prosecution claim).

In his opposition brief, Jones points out that his malicious prosecution claim is based on an alleged "due process" violation. (Opp'n at 550; Compl. ¶ 42.) But the Sixth Circuit no longer recognizes such a claim. As pointed out in *King v. Harwood*, 852 F.3d 568, 580 n.4 (6th Cir. 2017):

> Prior to 1994, [this circuit] recognized a § 1983 claim for malicious prosecution under the Substantive Due Process Clause of the Fourteenth Amendment. . . . Following the Supreme Court's splintered decision in *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), in which a plurality of the Court concluded that § 1983 claims for malicious prosecution could be brought only under the Fourth Amendment and not under the Substantive Due Process Clause of the Fourteenth Amendment, our circuit recognized a Fourth Amendment malicious-prosecution claims, with its four elements as recited by *Sykes* and *Sanders*.

*Id.* (citations omitted). Therefore, Jones cannot pursue a malicious prosecution claim under a due process theory.

---

[10] There is *no* basis for an unjust enrichment claim and the Court will devote no time to such conclusory, unsupported assertion.

Further, as with his fourth claim for relief, to the extent Jones may be attempting to challenge criminal convictions or penalties, he can only do so by way of a habeas petition, not a complaint under Section 1983. *Preiser*, 411 U.S. 475; *see also Heck*, 512 U.S. 477.

The defendants are entitled to summary judgment on the fifth claim for relief.

### *Seventh Claim for Relief—Tortious Interference*

In his seventh claim for relief, Jones alleges that "over the past couple of years" he has opened three other group homes. (Compl. ¶ 52.) A home located at 617 Carroll St. passed an inspection six months before plaintiff began renting it. (*Id*. ¶ 53.) Six months later, after Jones had rented the location, an evicted tenant complained to the Housing Department, which, having allegedly "discovered that it was the [p]laintiff who was renting the house . . .[,] came in and cited numerous violations against the [p]laintiff, where, the house was cleared of any violations [s]ix months before." (*Id*. ¶ 54.) Jones alleges that this "severely impacted the relationship between [him] and the owner, and [he] had to end the business relationship." (*Id*. ¶ 55.) Jones alleges that "[v]irtually, the same circumstances have taken place at 718 Copley[.]" (*Id*. ¶ 56.)

Defendants argue, correctly, that a claim under Section 1983 requires allegations of a violation of a cognizable constitutional right. (Mot. at 312 (citing *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (stating that the first element of a § 1983 claims requires the plaintiff to show "that he was deprived of a *right secured by the Constitution or laws of the United States*" (emphasis added)))) A plaintiff "cannot sue under § 1983 for tortious interference with contract because it is not a right that arises under federal law." *BPNC, Inc. v. Taft*, 147 F. App'x 525, 530 (6th Cir. 2005).

Defendants are entitled to summary judgment on Jones' seventh claim for relief.

*Eighth Claim for Relief—False Arrest/Imprisonment and Malicious Prosecution*

The eighth claim for relief was added to the original complaint by way of the Supplemental Complaint. In this claim, Jones asserts that the City knowingly used the wrong address when delivering notice of new charges against him. (S. Compl. ¶ 60.) Because he never received this notice, "an arrest warrant was made against him." (*Id*. ¶ 61.)[11] On May 5, 2017, while Jones was attending an Akron City Council meeting addressing his property at 460 S. Maple Street, he was "arrested in front of City Council and all the public onlookers and sent to the County Jail for the warrant." (*Id*. ¶ 62.) He was held in the Summit County Jail until bail was posted and he was released on May 6, 2017. (*Id*. ¶ 63.) Jones alleges that "[t]o send correspondence to another address and then to arrest and imprison the [p]laintiff for not being there further demonstrates [d]efendants [sic] past and present Constitutional violations." (*Id*. ¶ 64.)

"An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).

To the extent this is another malicious prosecution claim, as with the fifth claim for relief, Jones has not alleged or shown that any prosecution was resolved in his favor. *Sykes*, 625 F.3d at 308–09. Further, a malicious prosecution claim fails when there is probable cause to initiate the proceedings against the accused. *Id.* As pointed out by the defendants in their motion, at the December 21, 2017 plea proceedings, Jones agreed with the facts recited and entered a guilty plea. (*See* Doc. No. 39-8, Ex. H., *passim*.)

Defendants are entitled to summary judgment on Jones' eighth claim for relief.

---

[11] According to defendants' motion, Jones failed to appear in Akron Municipal Court for a proceeding in Case No. 17 CRB 03589. (Mot. at 313.) As a result, a warrant issued, with the instruction that the arresting officer "may not issue summons in lieu of arrest[.]" (*Id*. (citing Doc. No. 39-12, Ex. L at 529).)

*Municipal Liability of the City*

Municipalities may be held liable for the constitutional violations of their employees, but only where the municipality's policy or custom led to the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Jones has not actually stated a Section 1983 municipal liability claim, although he named the City as a defendant—a fact that he relies upon in his opposition brief. (*See* Opp'n at 557.) Nonetheless, to the extent someone might construe the complaint as including a *Monell* claim, Jones' failure to establish any underlying constitutional violation is fatal to any such claim, since it goes without saying that "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

The City is entitled to summary judgment on any claim based on *Monell*.

### 2.     FHA and ADA (Claim 1)

In his first claim for relief, Jones alleges:

14.     On February 16, 2012, the [p]laintiff filed a petition for conditional use to turn the house into a sober living environment, which was denied by the City of Akron. Plaintiff [a]ppealed and was denied again.

15.     Plaintiff has been served with notice that his group home exceeds maximum capacity of 5 unrelated adults in accordance with Akron Ordinance 153.260, which restricts the amount [sic] of disabled people who can live in a home.

(Compl. ¶¶ 14, 15.)[12] He alleges that the restriction in the city ordinance violates the FHA and the ADA, and that "[d]efendants [sic] actions have severely restricted and prohibited [his] business[.]" (*Id*. ¶¶ 16, 18.)

---

[12] In his complaint, Jones does not identify "the house," but the defendants claim it is located at 460 South Maple Street in Akron, Ohio. (Mot. at 298 n.3 (citing Doc. No. 39-9 at 416).)

There are several problems with the first claim for relief, all of which are exacerbated by Jones' apparent failure to conduct discovery so as to develop the factual underpinnings of the claim set forth in bare bones allegations in his complaint. All of these problems were also discussed early in this case when, on November 10, 2016, this Court denied Jones' request for a preliminary injunction. (*See* Doc. No. 6.) That ruling more than placed Jones on notice regarding the serious deficiencies in his complaint; yet, he chose to conduct no discovery to produce evidence supporting his claims and addressing the deficiencies.

The first problem with this claim for relief is that, even if it can be brought under either of these statutes, based on Jones' assertion in paragraph fourteen of his complaint that his conditional use permit application has already been denied and unsuccessfully appealed, the claim is *possibly* barred by the two-year statute of limitations. As the Court previously noted:

> Under the FHA, the statute of limitations requires a plaintiff to file a complaint within two years after the "occurrence or termination of an alleged discriminatory housing practice … whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 473 (6th Cir. 2006). Several courts in the Northern and Southern Districts of Ohio, including this Court, have subjected Title II ADA claims to the two-year limitations period applicable to personal injury actions in Ohio. *See McCormick v. Miami Univ.,* No. 1:10-CV-345, 2011 WL 1740018, at *13 (S.D. Ohio May 5, 2011); *Bay v. Clermont Cnty. Sheriff's Dep't,* No. 1:08−cv−376, 2010 WL 5014226, at *4 n. 4 (S.D. Ohio Nov. 3, 2010); *Deck v. City of Toledo,* 56 F.Supp.2d. 886, 891 (N.D. Ohio 1999). Plaintiff indicates he requested permission from the City to run a group home in 2012 and was denied. That is the last incident mentioned in his complaint. Based on that information, the statute of limitations for his FHA and ADA claims expired.

(Doc. No. 6 at 120.)

 Defendants, however, do not claim a time-bar with respect to this claim. Instead, contrary to Jones' assertion that his conditional use permit application has been denied by the City, defendants argue in their motion that the claim is not ripe precisely because it has not yet been denied. (Mot. at 298–99.) They claim that Jones' 2012 petition for a conditional use to establish a

rooming house "remains on Akron City Council's Agenda as of the date of the filing of this motion." (*Id.* at 298 (citing Doc. No. 39-9, Ex. I at 416).) The cited agenda was dated for July 30, 2018, and, indeed, lists Jones' application as an agenda item. (*See* Ex. I at 413.) In opposition, Jones argues that "the legal question is whether or not the claim is fit for judicial decision and what type of hardship the [p]laintiff will suffer if court consideration is withheld." (Opp'n at 541.) He claims that pursuit of any other remedies would be futile. (*Id.* at 542.)

Aside from the fact that this Court does not sit to review municipal decisions that do not implicate a federal constitutional or statutory right (*i.e.*, simply to ease a plaintiff's "hardship"), these arguments regarding ripeness are academic if Jones has initially failed to establish a viable claim of handicap or disability discrimination under either the FHA or the ADA.

Typically, plaintiffs raise one or all of the following theories: intentional discrimination, disparate impact, or failure to accommodate. To show intentional discrimination, Jones must establish that the City's decision to enact the relevant ordinance "was motivated at least in part by discriminatory animus[.]" *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 791 (6th Cir. 1996). "A disparate impact analysis examines a facially-neutral policy or practice . . . for its differential impact or effect on a particular group." *Hamm v. City of Gahanna*, No. C-2-96-0878, 2002 WL 31951272, at *7 (N.D. Ohio Dec. 23, 2002). Under a reasonable accommodation theory, a plaintiff must show that a public entity failed to make changes in rules, policies, practices, or services to afford a handicapped person equal use and enjoyment. *Id.*; 42 U.S.C. § 3604; 42 U.S.C. § 12131(2).

Jones is not specific about the nature of his claim, merely contending in general that he wishes to establish a "sober house" and that the tenants would be persons who fall within the coverage of the FHA and/or the ADA. The entire basis for Jones' generic claim of discrimination

is the limitation on "roomers" in the City's housing code—that the total number of roomers in a dwelling unit cannot exceed five. Jones offers no evidence in support of any of the three possible theories, merely arguing (without record support) that the City's ordinance subjects him to "hardship."

But, the FHA exempts from its coverage "any reasonable local, state, or federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1). In *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 735, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995) (citations omitted), the Supreme Court held that "rules that cap the total number of occupants in order to prevent overcrowding of a dwelling 'plainly and unmistakably[]' fall within § 3607(b)(1)'s absolute exemption from the FHA's governance[.]"

It is Jones' burden to establish that the occupancy restriction fails under any one or all of the three possible theories, under either or both statutes. Jones has failed to do so, offering only conclusory assertions that the constitution has been violated.

Defendants are entitled to summary judgment on Jones' first claim for relief.

### 3. Title VI (Claim 6)

In his sixth claim for relief, Jones alleges that defendants' actions and statements "demonstrate that their intentions are not [to] uphold [the City's] Ordinances, but that there are discriminatory motives." (Compl. ¶ 44.) He alleges that Gould accused him of "[not] car[ing] anything about these people here[]" (*id.* ¶ 45); Graves told Jones' son to "get yourself a REAL Job!!!" (*id.* ¶ 47); and Groeger "insulted [Jones'] Master's degree in Social work, and stated that his Licensure as a Counselor by the State of Ohio was not real or authentic." (*Id.* ¶ 48.) Jones asserts that this violates Title VI because it demonstrates "that [defendants'] purpose and actions in this case are racially biased and discriminatory[.]" (*Id.* ¶ 49.)

Although Jones captions this claim as being brought under Section 1983 and Title VII, there is no such claim. First, Jones is not alleging race discrimination in employment—which is what Title VII addresses. Second, a Title VII violation cannot form the basis of a Section 1983 claim. *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984).

Even if the Court construes Jones' claim as being brought under Title VI, which prohibits excluding persons from participation in federally-assisted programs on the basis of race, color, or national origin, 42 U.S.C. § 2000d, the claim fails.

First, Title VI cannot serve as a basis for a claim against the individual defendants because they, as individuals, are not entities receiving federal financial assistance to operate a program. *See, e.g.*, *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) (holding that plaintiff's Title VI claim failed because it was asserted against two individuals and not the entity receiving federal financial assistance).

As to the City, Jones has failed to allege, much less establish, that it is operating a federally-funded program from which he and/or his potential "sober house" tenants have been excluded on the basis of their race.

Jones' only argument in opposition to defendants' motion on this claim is that "[t]he [d]efendants in this case are all white, the [p]laintiff in this case is African-American." (Opp'n at 551.) Jones then repeats all the statements allegedly made by the various individual defendants. He asserts, based upon *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam), that he is entitled to bring a "class of one" equal protection claim. Maybe so, but that is simply not the claim he brought.

Defendants are entitled to summary judgment on Jones' sixth claim for relief.

### 4. Qualified Immunity

"Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Dominguez*, 555 F.3d at 549. Defendants include a section in their motion setting out case law regarding qualified immunity, suggesting that they believe the doctrine applies here. But, although there are several Section 1983 claims, defendants only make a specific qualified immunity argument with respect to the Fourth Amendment claim in the second claim for relief.

That said, there being no proven constitutional violation, the Court need not address the applicability, if any, of qualified immunity.

## III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. No. 39) is GRANTED.

**IT IS SO ORDERED**.

Dated: March 4, 2019

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**